IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | | |
| v. | : | Case No. 3:19-cr-163 |
| JOSE PEREZ-DOMINGUEZ, | | JUDGE WALTER H. RICE |
| Defendant. | : | |

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (DOC. #18)

Defendant Jose Perez-Dominguez was indicted on one count of conspiracy to possess with intent to distribute cocaine. This matter is currently before the Court on Defendant's Motion to Suppress Evidence, Doc. #18. For the reasons set forth below, the Court OVERRULES that motion.

I.     Factual Background

Ohio State Highway Patrol Trooper Jason Barhorst is also a Task Force Officer with the Department of Homeland Security and assists the Miami Valley Bulk Smuggling Task Force. On September 29, 2019, Barhorst was surveilling passing traffic on I-70 in Clark County with his K9 partner, Roy. He was informed that a dark-colored SUV may be transporting narcotics to the Dayton area. Doc. #20, PageID##111-12.

That afternoon, as a green Jeep passed him, Barhorst observed the driver pushed back in his seat with his arms stretched out to the steering wheel. Although the driver was not speeding, he nevertheless decreased his speed as he passed Barhorst's patrol vehicle. Trooper Barhorst pulled onto the highway to follow the Jeep. A dark-colored BMW, which appeared to be following the Jeep, was between Barhorst and the Jeep. The vehicles traveled west on I-70 for approximately three miles to the first available exit. Barhorst testified that there is "not a whole lot at that exit besides 2 gas stations." Barhorst observed both vehicles signal to exit the highway and followed them up the exit ramp. As the Jeep reached the top of the exit ramp, Barhorst observed the driver make a rolling right turn at the stop sign. *Id.* at PageID##69-71, 127. The dash camera video from Barhorst's patrol vehicle, introduced at the evidentiary hearing as Government's Exhibit 2-A, corroborates Barhorst's testimony concerning this traffic violation.

The black BMW followed the Jeep up the exit ramp, but was traveling very slowly, almost as if it were attempting to block Barhorst. The Jeep and the BMW both pulled into the first entrance to a gas station. Barhorst pulled into the second entrance to the gas station. Two Hispanic males, who had parked at a gas pump, had already exited the Jeep and were headed toward the store. Barhorst ordered them back to their vehicle. *Id.* at PageID ##72-74.

Barhorst informed the driver of the driver's failure to stop at the stop sign. He asked him for his driver's license and vehicle registration. The driver produced

2

an Ohio driver's license. He told Barhorst that the Jeep was a rental vehicle; however, he could not produce the rental agreement. *Id.* at PageID##76-77. Barhorst observed the passenger, Defendant Jose Perez-Dominguez, talking on his cell phone. This raised some suspicion and safety concerns, particularly because the BMW, which appeared to be traveling with the Jeep, was still in the gas station parking lot and Barhorst was alone. *Id.* at PageID##77-78.

The driver, who appeared overly nervous, told Barhorst that he was going to a soccer game in the Dayton area, but could not tell him exactly where it was to be held. When Barhorst asked the driver to exit the vehicle, the driver immediately put his hands up. When Barhorst conducted a pat-down of the driver, he noticed that the driver's hands were wet with sweat. Barhorst put him in the back of the patrol vehicle. *Id.* at PageID##79-83.

Barhorst then returned to the Jeep to speak to the passenger, who had no identification with him. He did, however, tell Barhorst his name and birthdate. The driver verified that the passenger was his nephew, Jose Perez-Dominguez. Barhorst then returned to his vehicle to conduct license checks and warrant checks on both occupants. He also contacted dispatch to conduct criminal history checks. In addition, Barhorst radioed Trooper Baker to assist with the traffic stop. Baker, who was just down the road, arrived within a few minutes. Meanwhile, the driver of the Jeep acknowledged that he had not come to a complete stop at the top of the exit ramp. *Id.* at PageID##84-87, 106, 123.

After Trooper Baker arrived, Perez-Dominguez was removed from the vehicle, patted down and placed in the rear of Baker's patrol car. Barhorst then had his K9 partner, Roy, conduct a free air sniff of the Jeep. Roy alerted at the left rear car door. *Id.* at PageID##88-89. This free air sniff took place approximately 16 minutes after Barhorst first ordered the men back into their car. *Id.* at PageID#109. Barhorst had not yet verified that the driver was authorized to operate the rental car, and he was still waiting on the results of the criminal background checks. *Id.* at PageID##91-92. When Barhorst and Baker searched the Jeep, they discovered two bricks of a substance containing cocaine. *Id.* at PageID##91, 110.

Defendant was indicted on October 24, 2019. Doc. #12. On January 6, 2020, he filed a Motion to Suppress Evidence, Doc. #18, arguing that the drugs found in the Jeep should be suppressed because they were the fruit of an unconstitutional traffic stop. The Court held an evidentiary hearing on February 12, 2020. The parties then filed post-hearing briefs. Docs. ##21, 22, 23.


II.     Analysis

The Fourth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, protects against unreasonable searches and seizures. "[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth Amendment], even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).

The Sixth Circuit has explained:

> The question of whether a particular traffic stop passes constitutional muster is analyzed under "the standard for temporary detentions set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny." *United States v. Everett*, 601 F.3d 484, 488 (6th Cir.2010). Under this framework, the stop must be 1) "justified at its inception"; and 2) "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20, 88 S.Ct. 1868. If an officer develops reasonable and articulable suspicion of criminal activity during a stop, "he may extend [the] traffic stop long enough to confirm or dispel his suspicions. Any such extension, though, must be 'limited in scope and duration.'" *Johnson*, 482 Fed. Appx. at 143 (quoting *Royer*, 460 U.S. at 500, 103 S.Ct. 1319).

*United States v. Winters*, 782 F.3d 289, 295–96 (6th Cir. 2015).

As a general rule, evidence obtained in violation of the Fourth Amendment must be suppressed unless "the costs of exclusion outweigh its deterrent benefits." *Utah v. Strieff*, —U.S.—, 136 S. Ct. 2056, 2059 (2016).

In this case, Defendant argues that the cocaine found in the Jeep must be suppressed because: (1) the initial traffic stop was unlawful; and (2) the officers impermissibly prolonged the traffic stop to conduct the free air sniff. The Court rejects both of these arguments.

    A.    Initial Traffic Stop Was Supported by Probable Cause

If an officer has probable cause to believe that a traffic violation has occurred, the officer may initiate a traffic stop. *United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005). Trooper Barhorst testified that he observed the driver of the Jeep make a right turn at the top of the exit ramp without coming to a

5

complete stop. Doc. #20, PageID##69-71, 127. This constitutes a violation of Ohio Revised Code § 4511.43(A).

Defendant suggests that Barhorst's perception may have been colored by the fact that he had been advised that a dark-colored SUV may be transporting narcotics to the Dayton area, and he was under pressure to observe some traffic violation in order to initiate a traffic stop of the Jeep.[1] Barhorst's testimony, however, is corroborated by the video from the camera mounted on the dashboard of Barhorst's patrol vehicle. Gov't Ex. 2-A. It is also corroborated by the driver's own admission that he had failed to come to a complete stop. Doc. #20, PageID##87, 106.

Based on the evidence presented, the Court finds that Trooper Barhorst had probable cause to believe that the driver of the Jeep committed a traffic violation. Accordingly, the initial stop of the vehicle was reasonable.

B.   No Impermissibly Prolonged Detention

Defendant next argues that, because the officers impermissibly prolonged his detention in order to allow Roy to conduct the free air sniff, the cocaine found in the Jeep must be suppressed.

---

[1] Defendant acknowledges that an officer's subjective intentions for initiating the traffic stop "play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996). He nevertheless argues that Barhorst's subjective intentions may be considered in assessing Barhorst's credibility.

6

In *Rodriguez v. United States*, 575 U.S. 348, 350 (2015), the Supreme Court held that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." Unlike tasks that are ordinary inquiries incident to a traffic stop, such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance," a dog sniff "is not fairly characterized as part of the officer's traffic mission." *Id.* at 355-56. Accordingly, unless an officer has a reasonable suspicion of additional criminal activity, a dog sniff that increases the ordinary length of the traffic stop violates the Fourth Amendment. *Id.* at 357. *See also Illinois v. Cabelles*, 543 U.S. 405, 407 (2005) ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.").

The Government argues that because, at the time of the free air sniff, the officers had not yet completed all steps necessary to address the traffic violation that necessitated the stop, the search and seizure was not unreasonable. In the alternative, the Government argues that, at the time of the free air sniff, the officers had a reasonable suspicion of additional criminal activity, such that continued detention was warranted. The Court agrees on both accounts.

Barhorst testified that, at the time that Roy conducted the free air sniff, there were several tasks that still needed to be completed that were incident to the traffic stop. He had not yet called the rental car company to verify that the driver

7

was authorized to operate the Jeep. He had not yet received the results of the criminal background checks, he had not yet learned whether Perez-Dominguez had any active warrants, and he had not yet issued a citation for failure to make a complete stop. Doc. #20, PageID#92.

Barhorst further testified that a typical traffic stop lasts approximately 15-20 minutes. However, it may take longer where, as here, one of the subjects does not have proper identification. *Id.* at PageID#121. In this case, only 16 minutes elapsed from the time that Barhorst first ordered the men to get back in their Jeep at the gas station and the time of the free air sniff. *Id.* at PageID#109. Accordingly, it cannot be said that the officers prolonged the length of the traffic stop beyond the time reasonably required to complete the issuance of a traffic ticket.

Moreover, even if the officers had prolonged the traffic stop beyond the time reasonably required to effectuate the purpose of the stop, they would have been justified in doing so because, by that time, they had an objectively reasonable, articulable suspicion that Perez-Dominguez and the driver of the Jeep were engaged in criminal activity. "Reasonable suspicion is based on the totality of the circumstances." *United States v. Jones*, 673 F.3d 497, 502 (6th Cir. 2012).

As Trooper Barhorst testified, he was aware that a dark SUV may be transporting narcotics to the Dayton area on the date in question. The Jeep caught his attention as it passed by because the driver was pushed back in his seat with his arms fully extended. Although the driver was not speeding, he

8

slowed down as he passed Barhorst. When Barhorst started to follow the Jeep, the Jeep, and the black BMW that appeared to be traveling in tandem with it, both signaled and exited the highway at the first opportunity. The driver of the Jeep quickly turned right as if trying to get away from Barhorst, and the driver of the BMW slowed down as if to impede Barhorst. The BMW followed the Jeep into the gas station parking lot. Immediately after pulling up to a pump at the gas station, the two males exited the Jeep, seemingly trying to distance themselves from the vehicle. Doc. #20, PageID#130.

Barhorst testified that both men were overly nervous. Although the driver had an Ohio driver's license, he could not produce a copy of the alleged car rental agreement. The passenger had no identification at all, which Barhorst found to be suspicious, and was talking on his cell phone during the encounter. The driver told Barhorst that they were travelling to a soccer game, but could not identify where the game was to be held. The driver had sweaty palms and immediately put his hands up even though Barhorst did not ask him to do so. *Id.*

Based on the totality of the circumstances, the Court finds that Trooper Barhorst had an objectively reasonable, articulable suspicion that these men were engaged in criminal activity. Accordingly, even if their detention was somewhat prolonged to allow Roy to conduct a free air sniff, it was not constitutionally unreasonable.

III.     Conclusion

For the reasons set forth above, the Court OVERRULES Defendant's Motion to Suppress Evidence, Doc. #18.

Date: May 1, 2020  /s/ Walter H. Rice (tp - per Judge Rice authorization after his review)
WALTER H. RICE
UNITED STATES DISTRICT JUDGE